# CHARLESTON.

## WALLIS *v.* NEALE *et al.*

Submitted February 12, 1897—Decided April 28, 1897.

43 529
47 494
43 529
48 495

1. GUARDIAN AND WARD—*Purchase for Ward—Liability of Guardian.*

Where a guardian, in pursuance of the request in writing of his ward, purchases for her a horse, and executes his notes as guardian for the purchase money, and she accepts and uses the horse for several years, and finally trades it for a horse and colt, which she afterwards sells, and receives the proceeds, although the guardian, by executing such note, becomes personally liable for the purchase money, this fact does not relieve the estate of the ward from liability for said purchase money. (p. 537.)

2. GUARDIAN AND WARD—*Resignation of Guardian—Settlement.*

If a third party pay said purchase money for said ward, and takes up said notes, and, said guardian having resigned, said third party is appointed guardian for the ward in the room and stead of said former guardian, he will be entitled to credit in the settlement of his accounts for the amounts so paid for his ward, the benefit of which was received by such ward. (p. 537.)

Appeal from Circuit Court, Mason County.

Bill by Sallie A. Wallis against E. L. Neale and W. R. Gunn. Decree for defendants, and plaintiff appeals.

*Affirmed.*

TOMLINSON & WILEY, for appellant.

J. B. MENAGER and W. R. GUNN, for appellees.

ENGLISH, PRESIDENT:

On the first Monday in March, 1895, Sallie A. Wallis filed her bill in the Circuit Court of Mason county against E. L. Neale, her guardian, and William R. Gunn, seeking thereby to surcharge and falsify the account of said Neale as her guardian. The bill alleges: That one J. D. Withers was appointed, qualified, and gave bond as her guardian, and served as such until July 7, 1892, when he resigned, and the defendant E. L. Neale was appointed such guardian in the room and stead of said Withers. That on July 7, 1892, said Neale qualified as her guardian, and gave bond as such, with the defendant William R. Gunn as his surety thereon. That on November 15, 1893, she intermarried with —— Wallis, her maiden name being Sallie A. Colwell. That on January 8, 1894, said E. L. Neale, as her guardian, made a settlement of his accounts as such guardian before John E. Beller, one of the commissioners of accounts of Mason County, wherein he charged against the plaintiff's estate one note and interest paid F. J. Jones, one hundred and twenty-three dollars, which she alleges was an improper charge against her or her estate. That neither she nor her estate ever owed such a note or interest thereon, and therefore said item was improperly allowed by said commissioner, and that said credit should be deducted from said settlement. And the plaintiff designates

the following items as improper credits to said E. L. Neale as her guardian, to wit: sixty-five cents as of March 5, 1892; six dollars as of May 25, 1892; fourteen dollars and forty-three cents as of December 29, 1892; thirteen dollars and eighty-eight cents, date not given; duebill to F. J. Jones for ten dollars. That the amount found due said guardian, marked "Amount due guardian and to balance, $196.96," is illegal and improper. That said guardian had no authority to involve her estate in debt to exceed the income therefrom in any one year, and that the said sum of one hundred and ninety-six dollars and ninety-six cents was improperly charged against her estate, and should be stricken from said settlement made by said commissioner on January 8, 1894. That said settlement was confirmed by the county court on April 3, 1894, and ordered to be recorded, and a certified copy thereof is exhibited. That on December 7, 1894, said E. L. Neale, as guardian for plaintiff, made a second settlement of his accounts as such guardian before John E. Beller, a commissioner of the county court of Mason county, wherein said guardian was allowed the following credit: "By amount due guardian at last settlement, $196.96; interest on same, $10.36,"—which sums plaintiff alleges were illegal and improper credits allowed said guardian, and that neither of said items is properly allowed as a credit to said guardian in said settlement, and that said items should be stricken out. That the item in said settlement, "Amount to balance and due guardian, $29.30," is improper, and should not have been allowed or charged in said settlement, and should be stricken therefrom. That the said settlement of December 7, 1894, made by her said guardian, E. L. Neale, containing the charges and credits above complained of, was confirmed by the county court of Mason County on January 8, 1895, and ordered to be recorded, a certified copy of which settlement and the order of confirmation was exhibited. That the defendant W. R. Gunn was and is the surety of E. L. Neale on his bond as plaintiff's guardian, a certified copy of which bond was exhibited.

The plaintiff further alleges that she was twenty-one years of age on the —— day of November, 1894, and is therefore entitled to the possession and control of her estate, both

real and personal, and that there is justly due her from her said guardian the sum of two hundred and seven dollars and thirty cents. She therefore prays that the credits and charges above set forth may be stricken from the said settlements, and each of them, and that the said E. L. Neale be required to pay to plaintiff any sum found due her; that the order confirming said settlements be set aside and annulled as to the items therein set forth, and that said settlements of account be surcharged and falsified as to the items above set forth; that the court decree to her the sum due her from her said guardian, against said guardian and W. R. Gunn, the surety on said guardian's bond, and that the case be referred to a commissioner to make a true and final settlement of the guardianship accounts of said E. L. Neale; and for general relief. On the 9th day of May, 1895, the defendant E. L. Neale demurred to the plaintiff's bill, which demurrer was overruled by the court, and thereupon said Neale tendered his separate answer to the plaintiff's bill, which was ordered to be filed, and the plaintiff replied generally thereto, said defendant by his answer putting in issue all the material allegations of the plaintiff's bill, and the cause was referred to H. R. Howard, one of the commissioners of the court, to settle the account of said E. L. Neale as guardian of the plaintiff, Sallie A. Wallis (*nee* Colwell), and to take, state, and report an account of all the money and property that had come into the hands of said guardian by virtue of his appointment as such. Several depositions were taken before said commissioner, and on the first day of August, 1895, said Commissioner Howard returned his report, in which he found that said guardian had overpaid his ward the sum of eight dollars and ninety-five cents. The plaintiff, Sallie A. Wallis, excepted to said report—*First*, because the commissioner allowed the note of one hundred dollars given by a former guardian of plaintiff for a horse, together with interest thereon, as a charge against plaintiff's estate, and said defendant E. L. Neale was allowed a credit therefor; *secondly*, because said commissioner allowed said guardian credit for a duebill given by plaintiff's former guardian, together with interest thereon; *third*, because said commissioner allowed said guardian for an account of Neale Bros., and for looking after the real estate of his said

ward; *fourth*, because said commissioner allowed said guardian a greater price for hauling than he charged in his settlement, surcharged and falsified in this case,—and asked that all the evidence taken in the case and all vouchers filed before said commissioner be certified to the circuit court of Mason County. On the 11th day of February, 1896, the cause was finally heard, and the court overruled said exception, and sustained said report, except as to the balance due said E. L. Neale from Sallie A. Wallis, which balance amounted to the sum of eight dollars and ninety-five cents as shown by said report, which was therby disallowed, and to that extent said report was corrected, and it was further decreed that the plaintiff take nothing by her bill, and that each party should pay their own costs; and from this decree Sallie A. Wallis applied for and obtained this appeal, and assigned the following errors, to wit: "(1) The court erred in sustaining the report of the commissioner, H. R. Howard. (2) The court erred in overruling plaintiff's exceptions to said commissioner's report. (3) The court erred in entering the decree of February 11, 1896."

These assignments may be considered together. It appears, from the testimony in the case, that J. D. Withers was appointed guardian for the appellant in December, 1886; that she owned a tract of land containing one hundred and fifty acres, about thirty of which were under cultivation; that said Withers lived near this tract of land, and looked after its management and cultivation for his ward, but made no settlement of his account as such guardian; that on the 7th day of July, 1892, said J. D. Withers resigned his guardianship of said ward, and the defendant E. L. Neale was appointed her guardian in the room and stead of said Withers; and that said Neale received nothing belonging to the estate of said ward from said Withers, but proceeded at once to control and cultivate said tract of land. On the 11th day of March, 1890, J. D. Withers, who was then guardian of the appellant, in pursuance of her written request, purchased for his said ward from F. J. Jones a horse, for the consideration of one hundred and ten dollars, executing his note as of that date, for one hundred dollars, with interest from date, which note was signed, "J. D. Withers, Guardian for Sallie A. Colwell,"

and on the same day executed a duebill for ten dollars to said F. J. Jones, signed in the same way. Both said note and duebill were executed for the horse purchased by said guardian, and said Withers in his deposition states that he never paid either of them. It appears, however, from the testimony in the cause, that said note for one hundred dollars and duebill for ten dollars were assigned by F. J. Jones to Neale Bros., and were paid by the defendant E. L. Neale before his appointment as guardian for the appellant. It further appears, from the testimony, that the horse purchased as aforesaid by Withers went into the possession of the said ward, and was used by her for several years, and was finally traded off by her for a horse and colt, which she sold for fifty dollars. As we have seen, these two items of one hundred dollars and ten dollars, the purchase money for said horse, which were allowed said E. L. Neale, guardian for the appellant, as a credit in the settlement of his account, together with the accrued interest thereon, form the basis of the two first exceptions to Commissioner Howard's report. Now, while it is true that transactions between guardian and ward and other persons connected by peculiarly confidential relations are looked upon with jealousy, and if improper advantage is taken of the influence belonging to the relation the transaction will be invalidated, yet in this instance it appears that the horse in question was purchased for the ward in pursuance of her request in writing, and that, in making the purchase, Withers, the guardian, had a due regard for his ward's condition in life, and could not be considered as having exceeded his duty as a careful guardian of his ward's interest in supplying her with such necessaries as her condition in life demanded. It is true the note and duebill executed by him as guardian did not bind his ward's estate in law, but it is shown by the testimony that she received and enjoyed the use of the horse that was purchased at her request by her guardian, and that subsequently, after arriving at the age of twenty-one years, she traded it for another horse and colt, which she sold, and received the proceeds. Can we regard this conduct on her part in any other light than that of having ratified the action of her guardian in making such purchase?

Schouler, in his work on Domestic Relations, in section 435, thus states the law on this point: "It seems settled that silence for an unreasonable time, taken in connection with other facts, such as using the property purchased, retaining possession of it, selling or mortgaging it, or in any way converting it to the infant purchaser's own use, would be sufficient ratification to bind the infant after reaching manhood, as where a minor bought a yoke of oxen, for which he gave his note, and after arriving at full age converted the oxen to his own use and received the avails. Mere lapse of time, it is true, will not usually amount to confirmation, unless the complete bar of limitations is fulfilled. But a brief lapse of time, in connection with other circumstances, making the infant's position inequitable if he means later to disaffirm, may amount to confirmation." Woerner, in his recent work on the American Law of Guardianship (section 57, p. 187), says: "It is an old and familiar doctrine that infants and other persons under disability to contract are bound nevertheless for necessaries to the extent of their reasonable value to those who furnish them by reason of the need or at the request of the infant; but if furnished at the instance or request of another, such as a parent, friend or guardian, the infant is not bound, unless both the father and guardian refuse to support the child. For necessaries so furnished by a guardian he will be reimbursed out of the ward's estate. * * * So, where the contract of the guardian was entered into at the request of the ward, and ratified by him after majority, the guardian will be allowed, in his settlement with the ward, credit for payments under such contract, but without ratification by the ward the loss will fall on the guardian." So, also, in the case of *Reading* v. *Wilson*, 38 N. J. Eq. 449, the court in its opinion says: "For any reasonable expenditure made by a guardian out of his own means for the benefit of his ward, he is, of course, entitled to be reimbursed out of the ward's estate; but this is the limit of the ward's liability, whether measured by rules of law or equity." Under the head of "Guardian and Ward," 9 Am. & Eng. Enc. Law, 150, the law is stated: "Where the act of the guardian is not fraudulent, but is unauthorized, the ward at his majority may elect either to ratify or reject it, unless the court has

previously confirmed it. If he repudiates the transaction, he must first resign whatever benefit he has received through it. And ratification will be presumed if, after becoming of age, he receives and retains the benefit with knowledge of the facts, or acquiesces in the action for a long time, or by other acts shows his approval." And in the note on page 151 it is said: "The ward will be presumed to have ratified the guardian's purchase of a horse and buggy for him out of the principal of his estate if, after majority, he continued to use them, and received the proceeds of their sale,"—citing *Caffey* v. *McMichael*, 64 N. C. 507.

Now, as between J. D. Withers and the appellant, if he had paid F. J. Jones the notes he executed for this horse, there can be no question that in the circumstances shown by the testimony said Withers would be entitled to be reimbursed out of the estate of his ward. It appears, however, that F. J. Jones assigned this bond and duebill to Neale Bros., and the defendant E. L. Neale paid them before he was appointed guardian for appellant, and was entitled to step into the shoes of Withers with reference thereto. This bond and duebill represented a debt, for which, although Withers was personally liable, yet the estate of his ward was also liable, and the defendant, E. L. Neale, by paying the purchase money for said horse, became the owner of that debt against the estate of said ward, and she became liable to reimburse him the amount he had paid F. J. Jones for her. In the case of *Barnum* v. *Frost's Adm'r* 17 Grat. 398 (third point of syllabus), it was held that "bonds executed by the guardian as guardian, showing on their face that they are given for the ward's expenses, and which, at the time, he promises to pay out of the profits of the ward's estate as soon as he can collect them, will relieve the ward's estate from liability for these expenses." In that case the guardian gave his bonds for the payment of his ward's expenses while living with a relative in the city of Norfolk for her education and support, undertaking to pay as soon as he could collect the funds of the estate. Rives, J., in delivering the opinion of the court, says, speaking of the lady with whom the ward lived, and to whom the debt was coming: "Perhaps she might have enforced a personal liability on

these bonds against the guardian at law, where his addition would be treated as a mere *descriptio-personæ*, especially if the bonds stood alone, without opposing proofs; but it is otherwise in equity, which regards the substance rather than the form, and explores the acts of the parties to give effect to their intentions." And, after citing several authorities, he further says: "In view of these authorities, I cannot see how it can be successfully contended that the giving of these notes by the guardian, under the circumstances, can be held to distinguish the appellee's claim upon the infant's estate, if such claim is properly cognizable in equity." In the case we are considering the defendant, E. L. Neale, paid the purchase money to F. J. Jones for this horse, which Withers, her guardian, had agreed to do, but failed. The notes he took up from Jones were merely paper evidences of the debt which her guardian, Withers, had contracted to pay at her request, and the defendant, E. L. Neale, by paying these notes, paid the purchase money for the horse, which she received and continued to use after she arrived at the age of twenty-one years, and which she traded off, and received the proceeds of the sale of the horse and colt for which she traded it. Her estate got the benefit of the horse, and the defendant Neale, having paid for the same for her, is entitled to be reimbursed out of her estate. So it was held in the case of *Kitchen* v. *Lee*, 11 Paige 107, that "infants are not permitted to retain the benefits of purchases or contracts which they repudiate."

It is claimed by the appellant that she ought not to pay for the horse because the debt is evidenced by notes, and that E. L. Neale, as guardian should not be allowed credit for the amount paid on the purchase money of the horse, and for necessaries for her, because he paid for them out of the income of succeeding years. In the case, however, of *Barton* v. *Bowen*, 27 Grat. 849 (third point of syllabus), it was held that, "in paying the ward's expenses for board and tuition, the guardian expended the principal of her personal estate. As a court of equity would have authorized the expenditure, if application had been made to the court for authority to do it before it was done, a court of equity will approve and confirm it after it is done." Under our statute (Code, c. 82, s. 8), the principal or a

portion thereof, meaning the personal estate of the ward, may be applied towards the ward's education or maintenance when allowed by the circuit court on petition; and the facts disclosed in this case would have supported such a petition on behalf of the appellant.

The next exception to the commissioner's report is claimed because said commissioner allowed said guardian for an account of Neale Bros. This firm was engaged in selling merchandise at a store in the neighborhood of the appellant, and the defendant E. L. Neale was one of the firm. The account referred to consists of articles furnished his said ward from this store which account was paid by said E. L. Neale, and an itemized account is filed, which shows on its face that the articles sold appellant from said store were necessaries, and the proof shows that they were suitable to her condition in life.

The next exception is claimed because the commissioner had allowed the guardian a sum for looking after the real estate of his ward. The commissioner in the case under consideration allowed the guardian ten *per cent.* for his trouble in looking after and managing her estate. This sum the commissioner thought reasonable, and the court below has approved his finding. Prof. Minor, in his Institutes (volumne 1, p. 490), says: "A commission of $7\frac{1}{2}$ and even 10 *per cent.* has been allowed under peculiar circumstances, where the estate was troublesome to manage, and the amount of money received small" (which comports with the facts in this case), citing *Fitzgerald* v. *Jones*, 1 Munf. 156; *McCall* v. *Peachy's Adm'r*, 3 Munf. 306; *Cavendish* v. *Fleming*, *Id.*, 202.

The remaining exception to the commissioner's report is claimed to consist in the fact that the commissioner has allowed said guardian a greater price for hauling than he charged in his settlement, surcharged and falsified in this case. It is true that the guardian, in making his *ex parte* settlement, was liberal with his ward, and charged her less for hauling than the proof shows it was really worth; but the appellant was not satisfied with that settlement, and, having filed her bill to surcharge and falsify it, the account had to be stated *de novo*, and in so doing the commissioner must rely upon the evidence, and we see nothing in the evidence sufficient to disturb his findings. The rule in re-

gard to recommittal of commissioners' reports, where they have been confirmed, has been laid down by this Court in the case of *McGuire* v. *Wright*, 18 W. Va. 507 (point 4 of syllabus), where it is held that, "where questions of fact are submitted to a commissioner in chancery, his finding upon such facts should be sustained, unless the court is satisfied from the evidence before the commissioner that such findings are erroneous, though such report is not entitled to as much weight as the verdict of a jury." See, also, *Reger* v. *O'Neal*, 33 W. Va. 159 (10 S. E. 375).

My conclusion, therefore, is that the circuit court committed no error in over-ruling the exceptions to the commissioner's report and in dismissing the plaintiff's bill. The decree is affirmed, with costs and damages.

*Affirmed.*