655 S.E.2d 548

**STATE of West Virginia ex rel. Jeanette PACKARD, Petitioner,**

v.

**The Honorable Roger L. PERRY, Judge of the Circuit Court of Logan County, and Ramanathan Padmanaban, M.D., Respondents.**

No. 33214.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 19, 2007.

Decided Nov. 21, 2007.

---

528

Anne E. Shaffer, Esq., Charleston, and Mark H. Mitchell, Esq., Williamson, for Petitioner, Jeanette Packard.

Debra A. Nelson, Esq., Mundy & Nelson, Huntington, for Respondent, Ramanathan Padmanaban, M.D.

BENJAMIN, Justice:

In this matter, the petitioner, Jeanette Packard, seeks a writ of prohibition to prevent the enforcement of two rulings of respondent, the Circuit Court of Logan County [hereinafter, "circuit court"], in actions arising from the medical care provided to her son, Robert Whitt [hereinafter, "Robert"], by respondent, Dr. Ramanathan Padmanaban [hereinafter, "Dr. Padmanaban"]. In the first ruling which petitioner seeks to prohibit, the circuit court ruled, on April 5, 2006, that only the petitioner, through an independent action, may seek recovery for pre-majority medical expenses incurred in the treatment

of her minor son, Robert, as a result of Dr. Padmanaban's alleged medical malpractice. By this ruling, the circuit court determined that Robert, as a minor, has no right to recover such medical expenses in an action brought on his own behalf, but rather that such medical expenses may only be recovered through an independent action maintained by petitioner, his mother. The effect of this ruling was to create a jury question as to when petitioner discovered the alleged medical malpractice involving her son and whether her separate, independent action for such pre-majority medical expenses was barred by the statute of limitations. In the second ruling which petitioner seeks to prohibit, the circuit court ruled, on June 26, 2006, that petitioner may not amend her complaint to add a cause of action for battery arising from Dr. Padmanaban's alleged failure to obtain informed consent prior to Robert's surgery.

This Court has before it the petition seeking writs of prohibition, a limited record related to the issues raised by the petition, and the briefs and arguments of counsel. After careful consideration, we grant the writ to prevent enforcement of the ruling that Robert Whitt, as a minor, has no right to seek recovery of his pre-majority medical expenses in an action brought on his behalf. We decline, however, to prohibit the circuit court below from refusing to allow amendment of petitioner's complaint to add a cause of action for battery.

## I.

### FACTS AND PROCEDURAL BACKGROUND

On or about November 21, 1994, respondent Dr. Ramanathan Padmanaban, an orthopedist at Logan General Hospital, reduced a fracture of two-year-old Robert Whitt's elbow. Because Robert's mother, the petitioner, was unavailable at the time,[1] Dr. Padmanaban obtained the consent of Robert's grandparents to perform surgery on Robert.

On June 27, 2003, the petitioner, both individually, and as parent, guardian, and next friend of Robert, who was still a minor,[2] filed a medical malpractice action against Dr. Padmanaban in which she alleged that Dr. Padmanaban's negligent medical treatment of Robert's fractured elbow left him with a deformity of his forearm. The petitioner's complaint specifically asked that Robert be compensated for his past medical expenses.

On December 22, 2003, Dr. Padmanaban filed a motion to dismiss the petitioner's claim for medical expenses alleging that medical expenses incurred prior to Robert's eighteenth birthday are not recoverable by Robert, but are recoverable only individually by the petitioner through an independent action. Therefore, Dr. Padmanaban asserted, petitioner's individual claim for such medical expenses was barred by the two-year statute of limitations applicable to her, rather than the longer statute of limitations applicable to Robert.

In support of his motion, Dr. Padmanaban asserted that subsection (a) of W. Va.Code § 55-7B-4(a) (1986), provides that, except as provided in subsection (b), a medical malpractice action must be brought within two years of the date of injury or of the date when the person discovers or, with the exercise of reasonable diligence, should have discovered the injury, whichever last occurs. Subsection (b) provides that "[a] cause of action for [a health care case] injury to a minor, brought by or on behalf of a minor who was under the age of ten years at the time of such injury, shall be commenced within two years of the date of such injury, or prior to the minor's twelfth birthday, whichever provides the longer period." Because the injury to Robert allegedly occurred in 1994, and the petitioner did not bring the action until 2003, there is a potential statute of limitations problem as to the petitioner's independent individual claims. However, since Robert was injured in 1994 when he was under the age of ten, and the action was

---

1. According to the pleadings, the petitioner was in Ohio, and Robert was visiting his grandparents in Williamson, West Virginia, at the time of Robert's injury.

2. Robert was born June 29, 1992.

brought on his behalf in 2003, prior to his twelfth birthday in 2004, there is no potential statute of limitations problem with respect to claims brought on Robert's behalf. Thus, there is considerable significance that attaches to which independent claims belong to the petitioner individually, and which claims belong to Robert, because those independent claims that belong only to the petitioner individually may be time-barred.

By order of April 5, 2006, the circuit court denied Dr. Padmanaban's motion to dismiss the petitioner's individual claims based on the statute of limitations after finding that it is a jury question as to when the petitioner discovered the alleged malpractice. However, the circuit court agreed with Dr. Padmanaban that only the petitioner, not Robert, has the right through an independent action to recover Robert's medical expenses incurred during his infancy as a result of the alleged malpractice.

Additionally, in May 2006, the petitioner orally moved the circuit court for leave to amend her complaint to add a cause of action for battery arising from Dr. Padmanaban's failure to obtain informed consent prior to Robert's surgery.[3] By order entered June 26, 2006, the circuit court denied the petitioner's motion for leave to amend her complaint based on the petitioner's inexcusable delay in making the motion.

The petitioner now seeks a writ of prohibition from this Court to prevent the enforcement of both of the circuit court's rulings.[4] By order of October 26, 2006, this Court granted a rule to show cause why relief in prohibition should not be granted. Thereafter, the parties filed their respective briefs and the Court heard oral argument on January 23, 2007. Subsequent to this oral argument, Justice E. Elliott Maynard was voluntarily disqualified from this matter, and Senior Status Judge L.D. Egnor, was as-

signed to hear this matter. Thereafter, the Court again heard oral argument from the parties on September 19, 2007. For the reasons set forth below, we now grant, in part, and deny, in part, the prohibition relief sought by the petitioner.

## II.

### STANDARD OF REVIEW

Concerning the standard of review applicable to a writ of prohibition, this Court has explained that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. *W. Va.Code* 53–1–1." Syllabus Point 2, *State ex rel Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977). "The writ [of prohibition] lies as a matter of right whenever the inferior court (a) has no jurisdiction or (b) has jurisdiction but exceeds its legitimate powers and it matters not if the aggrieved party has some other remedy adequate or inadequate." *State ex rel Valley Distributors, Inc. v. Oakley*, 153 W.Va. 94, 99, 168 S.E.2d 532, 535 (1969).[5] Further,

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or

---

3. The petitioner's contention for asserting a battery claim was that only a parent can consent to medical treatment in a non-emergency.

4. Specifically, the petitioner requests that the circuit court be directed to include on the verdict form a space for the jury to award Robert his past medical expenses and those incurred prior to his reaching his majority.

5. According to W. Va.Code § 53–1–1 (1923),

The writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers.

substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syllabus Point 4, *State ex rel Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). We also observe that " '[a] trial court is vested with a sound discretion in granting or refusing leave to amend pleadings in civil actions. Leave to amend should be freely given when justice so requires, but the action of a trial court in refusing to grant leave to amend a pleading will not be regarded as reversible error in the absence of a showing of an abuse of the trial court's discretion in ruling upon a motion for leave to amend.' Syllabus Point 6, *Perdue v. S.J. Groves and Sons Co.*, 152 W.Va. 222, 161 S.E.2d 250 (1968)" Syl. Pt. 5, *Poling v. Bellington Bank, Inc.*, 207 W.Va. 145, 529 S.E.2d 856 (1999). With these standards to guide us, we now determine the propriety of granting a writ of prohibition to one or both issues in the instant case.

## III.

## DISCUSSION

### A.

### Right of Minor to Recover Medical Expenses

■ First, the petitioner urges this Court to adopt the rule followed by several courts that both a minor child and his or her parents possess a common right to recover medical expenses incurred as a result of negligent injury to the minor, provided that there is no double recovery. According to the petitioner, West Virginia law is unclear whether a minor, in addition to his or her parents, possesses a right to recover past medical expenses. The petitioner argues that permitting a minor to recover medical expenses is consistent with the policy incumbent in civil actions that the tortious party be responsible for his or her acts and that the injured party be made whole.

Dr. Padmanaban responds that West Virginia law clearly follows the prevailing rule that the parent, not the minor child, possesses the right to recover medical expenses incurred as a result of the minor's personal injuries. Further, Dr. Padmanaban avers that most courts have dismissed the parents' claims for medical expenses where the claims were time-barred, finding that the tolling statute applicable to the minor's claims did not toll the parents' claims.

This Court historically has adhered to the common law rule that a parent, not a minor child, may recover a child's pre-majority medical expenses incurred as a result of personal injury to the child. "The parental right to recover expenses when a child is injured stems from the parents' legal obligation to support a child." 67A C.J.S. *Parent and Child* § 331 (2002), citing *Lasley v. Georgetown University*, 842 F.Supp. 593 (D.D.C. 1994). Thus, at common law, an injury to a child gave rise to two independent causes of action: one on behalf of the child for such damages as pain and suffering, permanent injury, post-majority impairment of earning capacity, and post-majority medical expenses; the other on behalf of the parents for such damages as loss of services during minority and pre-majority medical expenses. *See, Barker v. Saunders*, 116 W.Va. 548, 549, 182 S.E. 289, 290 (1935).

■ The common law rule developed because parents had a duty to support their child, and in turn were therefore obligated to pay for their child's medical expenses. In our early case of *McCallam v. Hope Natural Gas*, 93 W.Va. 426, 117 S.E. 148 (1923), it was held that "Generally, an infant, in an action for personal injuries, cannot recover for expenses incurred for medical attendance, since such expenses fall upon the father, who is responsible for the infant's care." *McCallam*, Syllabus Point 2. This holding was based on

... the recognized principle that the responsibility for the care of the minor rests

in the father[.] [6] [T]he law seems well established that save for excepted cases a minor cannot recover for medical expenses in an action for personal injury. "Where the plaintiff is a minor, he cannot recover for medical expenses incurred for medical attendance unless he has actually paid them, nor can he recover at all for a medical bill paid by his father, nor where, under the circumstances of the case, the parents of the minor are primarily liable for the bill." 8 A. & E. Ency. Law, 648. . . . It is not unlike the principle that a married woman may not recover for expenses incurred for medical attendance, the responsibility therefor falling on the husband.[7]

93 W.Va. at 433–434, 117 S.E. at 151 (internal citations omitted)(footnotes added). The primary motivating objective of the common law rule therefore was to allow the party who actually suffered the damages to recover the loss from the responsible tortfeasor.[8] A secondary rationale for the common law rule seems to have also been to prevent double recoveries. *See, Sox v. United States,* 187 F.Supp. 465, 469 (E.D.S.C.1960).

Initially, the dividing line between parent and child actions was clear and deep. The actions were seen as being so separate and distinct that the actions were procedurally and substantively independent of each other.[9] In Syllabus Point 1 of *Barker, supra,* this Court held that "Where a minor child is injured by the wrongful act or omission of another, the natural guardian may recover from such other the necessary hospital expenses incurred in consequence of such injury." The Court explained in *Barker* that,

It is well settled in this country that where a minor child is injured by the wrongful act or omission of another, the father, or mother, if she be the natural guardian, may recover for the loss of such child's services and for medical or surgical attendance, nursing, and other expenses incurred by such parent in consequence of the injury.

damages for injury to her person. In the absence of averment and proof that she has paid the expenses of her cure and for domestic services rendered necessary by her disability out of her separate estate, she is not entitled to recover such expenses as a part of her damages.

*But see* W. Va.Code § 48–29–303 at fn. 6, *supra,* which makes both the husband and wife liable for the reasonable and necessary services of a physician rendered to the husband or wife while residing together.

**8.** However, the right to recover for medical expenses incurred in treating injuries to an adult child belongs to the child alone, even though they were paid by a parent. This rule has been followed even where the parent is legally obligated to support the adult child because the child is incapacitated by a disability. *See, Lasley v. Georgetown Univ.,* 842 F.Supp. 593 (D.D.C.1994), certified question answered, 688 A.2d 1381 (D.C. 1997) (stating District of Columbia law); *Kotlar v. House,* 57 Ohio App.3d 26, 566 N.E.2d 701 (1989).

**9.** Thus, where a father, acting as next friend to his injured child, filed a second action for loss of his son's services, he was not permitted to stipulate to the prior record and judgment in his son's case because a jury may have reached a different conclusion when considering the father's contributory negligence. *See, Gumienny v. Hess,* 285 Mich. 411, 280 N.W. 809, 810 (1938)citing *Hooper v. Southern Ry.,* 112 Ga. 96, 37 S.E. 165, 167 (1900).

**6.** According to 67A C.J.S. *Parent and Child* § 332,

The obligation to support and provide medical treatment for minor children has traditionally been placed on the father, and in turn, the father ordinarily has been entitled to the services of his child during the child's minority and, as between the parents, has alone been afforded the right to bring suit for parental losses due to injuries to the child. In contrast, the mother ordinarily had no such parental rights recognized by law. This remains the rule in some states. However, the rule is now far from universal[.] (Footnotes omitted.).

After the *McCallam* decision, our Legislature codified the responsibility of both parents to pay for the expenses of a physician in the treatment of their minor child. Specifically, according to W. Va.Code § 48–29–303(a) (2001),

A husband and wife are both liable for the reasonable and necessary services of a physician rendered to the husband or wife while residing together as husband and wife, or for reasonable and necessary services of a physician rendered to their minor child while residing in the family of its parents, and for the rental of any tenement or premises actually occupied by the husband and wife as a residence and reasonably necessary to them for such purpose.

**7.** In Syllabus Point 2 of *Larzo v. Swift & Co.,* 129 W.Va. 436, 40 S.E.2d 811 (1946), this Court held that,

A husband may not be joined with his wife as co-plaintiff in an action by her to recover

116 W.Va. at 549, 182 S.E. at 290 (citations omitted). More recently, we held in Syllabus Point 3 of *Glover v. Narick*, 184 W.Va. 381, 400 S.E.2d 816 (1990), that,

A personal injury to a minor child gives rise to two causes of action: (1) an action on behalf of the child for pain and suffering, permanent injury, and impairment of earning capacity after majority; and (2) an action by the parent for consequential damages including the loss of services and earnings during minority and expenses incurred for necessary medical treatment for the child's injuries.

As noted by Dr. Padmanaban, the majority of states continue to adhere, in some form, to the common law rule that "[w]here a minor child is injured by the wrongful act or omission of another, the parent, and only the parent, ordinarily has a right of action for loss of services of the child and other pecuniary damages sustained in consequence of such injury." 67A C.J.S. *Parent and Child* § 331 (2002) (footnote omitted). *See, e.g., Blue Cross and Blue Shield of Alabama v. Bolding*, 465 So.2d 409, 412 (Ala.Civ.App. 1984) ("Ordinarily, the father may recover in a separate suit for the loss of his child's services and for medical expenses incurred in treating his child. The minor is not entitled to such a recovery.") (internal citation omitted); *National Bank of Commerce v. Quirk*, 323 Ark. 769, 918 S.W.2d 138, 151 (1996) (a child does not have an independent right to recover medical expenses); *Brent v. Hin*, 254 Ga.App. 77, 561 S.E.2d 212, 215 (2002) ("the right to recover a minor's medical expenses in a tort action is vested solely in the child's parents")(quoting *Mitchell v. Hamilton*, 228 Ga.App. 850, 493 S.E.2d 41 (1997)); *Primax Recoveries, Inc. v. Atherton*, 365 Ill.App.3d 1007, 303 Ill.Dec. 452, 851 N.E.2d 639, 642 (2006) ("any claim for medical expenses incurred in treating a minor for injuries sustained due to a tortfeasor's negligence belongs to the parents, rather than the child."); *Betz v. Farm Bureau Mutual Ins. Agency*, 269 Kan. 554, 8 P.3d 756, 760 (2000) ("Gener-

ally, the right to seek medical expense damages for an injured child belongs to the parent."); *Palmore v. Kirkman Laboratories, Inc.*, 270 Or. 294, 527 P.2d 391, 396 (1974) ("It is generally held that medical expenses incurred due to the negligent injury of a minor unemancipated child are damages suffered by the parent and not the child.").[10]

Although the common law vested the cause of action for pre-majority medical expenses in the parents, a number of exceptions to the common law rule have been recognized, such as where,

(1) the minor child has paid or agreed to pay the expenses; (2) the minor child is legally responsible for payment, such as by reason of emancipation, or the death or incompetency of his or her parents; (3) the parents have waived or assigned their right of recovery in favor of the minor child; or (4) recovery of expenses is permitted by statute.

67A C.J.S. *Parent and Child* § 331 (footnotes omitted). Indeed, several courts have abandoned the common law rule altogether in favor of a rule that recognizes a right to maintain an action to recover medical expenses in both a minor child and his or her parents, as long as a double recovery is not permitted. In *White v. Moreno Valley Unified Sch. Dist.*, 181 Cal.App.3d 1024, 226 Cal.Rptr. 742 (1986), the California Court of Appeals held that a cause of action to recover medical expenses incurred on account of a minor's personal injuries belongs to both the parents and the minor. The court explained:

As stated by the court in *Faitz v. Ruegg* (1981) 114 Cal.App.3d 967, 971, 171 Cal. Rptr. 149: "The applicable rules were summarized in *Bauman v. San Francisco* (1940) 42 Cal.App.2d 144 [108 P.2d 989], ... at pages 162–163, as follows: 'The parents of a minor are normally responsible for medical and hospital care furnished the minor, and the cause of action to recover these items normally rests with the parents. But the child is also liable for the

---

**10.** *See also, Alaskan Village v. Smalley*, 720 P.2d 945 (Alaska 1986); *Kinsella v. Farmers Ins. Exchange*, 826 P.2d 433 (Colo.Ct.App.1992); *Myer ex rel. Myer v. Dyer*, 643 A.3d 1382 (Del.Super. Ct 1994); *Gookin v. Norris*, 261 N.W.2d 692 (Iowa 1978); *Vachon v. Halford*, 125 N.H. 577, 484 A.2d 1127 (1984); *West Through Farris v. Tilley*, 120 N.C.App. 145, 461 S.E.2d 1 (1995); *Korth v. American Family Ins. Co.*, 115 Wis.2d 326, 340 N.W.2d 494 (1983).

reasonable value of these expenses. Moreover, where the parents bring the action as guardians ad litem, and the bills have not been paid, and these expenses are pleaded, this constitutes a waiver of the parents' rights, and at least where contributory negligence of the parents is not asserted as a defense, the child may properly recover these items. In such cases the parents would be estopped from recovering these expenses on their own behalf".... (See also *Morningred v. Golden State Co.* (1961) 196 Cal.App.2d 130, 138–139 [16 Cal.Rptr. 219]; *Shriver v. Silva* (1944) 65 Cal.App.2d 753, 768 [151 P.2d 528] )." (Emphasis deleted.)

Thus, strictly speaking, the cause of action to recover medical expenses incurred on account of a minor's personal injuries does not belong exclusively to the parents; in reality it belongs to both the parents and the minor. (See *Bauman v. San Francisco* (1940) 42 Cal.App.2d 144, 161, 108 P.2d 989.) Otherwise it would be legally impossible for a parent to "waive" his or her claim in favor of the minor by instituting an action to recover such expenses as guardian ad litem for the minor. If the minor was not an owner of the right of action in the first place, no "waiver" on the part of the parent could serve to transfer it to the minor.

226 Cal.Rptr. at 745–746.

■ In *Lopez v. Southwest Community Health Services,* 114 N.M. 2, 833 P.2d 1183 (Ct.App.1992), the Court of Appeals of New Mexico concurred with the reasoning of the *Moreno* Court. The defendant hospital in *Lopez* argued that future medical and non-medical expenses were not recoverable by the minor because as a matter of law such expenses are the legal responsibility of the minor's parents. The court framed the issue as "whether an injured child may recover damages for future medical and non-medical

expenses to be incurred by his parents." 833 P.2d at 1192. In discussing this issue, the court reasoned that,

We reject the view of those jurisdictions which would prohibit a minor from recovering his or her own medical expenses.

We can think of no principled reason why the right to recover a minor's future medical expenses should lie exclusively with the parents, as long as defendants are protected against double recovery. We recognize that generally contracts entered into by minors are voidable,[11] however, minors are usually liable for the value of necessaries furnished to them.[12] Both the parent and child have been found liable for medical expenses upon a suit by a medical health care provider; therefore, it follows that either should have the right to be compensated for the reasonable value of such medical expenses

We find most persuasive the logic and rationale behind the practice adopted by California courts. California follows the rule that the cause of action to recover a minor's medical expenses belongs to both the minor and the parents. In addition, we agree with California's finding of fault with a rule providing that the right to recover a minor's medical expenses belongs to the parent but can be waived in favor of the minor .... The question of waiver should only arise if the parent *also* seeks to recover for the minor's medical expenses. In a situation where the minor has sued to recover his or her future medical expenses, the parent may be held to have waived his or her right to recover such damages and be estopped from seeking double recovery. For the reasons stated, we hold that New Mexico allows a minor, in these circumstances, to recover for his or her future medical and non-medical expenses.

11. In Syllabus Point 2 of *Andrews v. Floyd,* 114 W.Va. 96, 170 S.E. 897 (1933), this Court held that "Contracts of infants, generally, are not void, but voidable at their election, and may be ratified or disaffirmed after majority."

12. Under our law, "Contracts for necessaries, such as food, lodging, clothing, and other things

essential to life and comfort, and in keeping with an infant's station in society, cannot be avoided on the ground of infancy." Syl. Pt. 5, *Wallace v. Leroy,* 57 W.Va. 263, 50 S.E. 243 (1905), *overruled on other grounds, Strawn v. Ingram,* 118 W.Va. 603, 191 S.E. 401 (1937).

833 P.2d at 1191–1193 (citations omitted) (footnotes added).

In *Boley v. Knowles*, 905 S.W.2d 86 (Mo. 1995), a case with facts similar to the instant one, a minor, by her mother as next friend, filed an action alleging medical malpractice. The minor's mother also joined the action in her individual capacity alleging that, as the minor's parent, she incurred medical expenses for her daughter's treatment necessitated by the negligence. Subsequently, the mother's claim was dismissed as time-barred. Thereafter, the minor sought leave of the court to amend her complaint to seek damages for medical expenses incurred as a result of the malpractice. The trial court denied the motion, finding that to grant the motion would effectively extend the statute of limitations that barred the mother's claim. The minor appealed.

In its discussion, the Supreme Court of Missouri first reviewed several instances in which it has been held that a minor can recover for medical expenses incurred as a result of negligence. These include situations where the parents waived their claim in favor of the child; where the parents are for some reason estopped from asserting their claim; where the minor is emancipated; where the minor has actually paid the medical expenses; and where courts have permitted creditors to hold minors liable for their medical expenses. *Boley*, 905 S.W.2d at 89. The *Boley* court then addressed the specific issue of whether the minor has an independent and concurrent right to bring an action to recover medical expenses when the parental cause of action is barred by the applicable statute of limitations:

A number of courts that have addressed the issue have permitted the minor to recover medical expenses in a separate action. *See, e.g., Myer v. Dyer*, 643 A.2d 1382, 1387 (Del.Super.1993) (by not presenting timely claim, parents waived medical expense claim and separate claim existed on behalf of child for such expenses); *Davis v. Drackett Prods. Co.*, 536 F.Supp. 694, 697 (S.D.Ohio 1982) (under Ohio law, statute of limitations may bar parents' claim for medical expenses incurred for treatment of minor, but minor may recover

the full amount to which parents would be entitled); *McNeill v. United States*, 519 F.Supp. 283, 291 (D.S.C.1981) (statute of limitations barred parents' claim for medical expenses paid on behalf of minor, but minor may maintain the claim in his separate action); *Sox [v. United States]*, 187 F.Supp. [465] at 469 [ (E.D.S.C.1960) ] (same). It is apparent from these decisions that the courts viewed the cause of action as a joint right available to the parents and the child. The child's right was recognized, at least implicitly, so as to avoid the bar of the statute of limitations.

Other courts, however, have considered the claim for medical expenses as belonging exclusively to the parents; thus, if the parents' action for medical expenses is barred by the applicable statute of limitations, the claim for medical expenses is also barred when asserted by the child. *See, e.g., Hutto v. BIC Corp.*, 800 F.Supp. 1367, 1372 (E.D.Va.1992) (assignment of parents' claim for medical expenses to minor does not extend the limitations period); *Vaughan v. Moore*, 89 N.C.App. 566, 366 S.E.2d 518, 520 (1988) ("[I]n order to give effect to the waiver, we would essentially extend the parent's claim beyond its three-year statute of limitations."); *Rose v. Hamilton Medical Ctr., Inc.*, 184 Ga.App. 182, 361 S.E.2d 1, 2 (1987) (action to recover medical expenses of a minor is vested exclusively in the parents).

Review of the decisions of this state and those of other jurisdictions reveals that the primary underlying concern of the courts has been to avoid multiple judgments for recovery of medical expenses. *See, e.g., Sox*, 187 F.Supp. at 469. Courts, therefore, allowed minors to maintain an action to recover medical expenses, if at all, only when the parents could not bring the claim themselves. Apparently attempting to work within the framework of the common law, some courts held that the parents "waived" their claim for medical expenses in favor of their child by not asserting the claim within the limitations period. In this context, use of the term "waiver" is but a fiction, apparently employed to ensure that a claim for recovery of medical expense damages would be available to someone.

The law has evolved, therefore, to permit recovery but has done so without meaningful analysis and by application of a vague theory of "waiver," employing a contortion of that term as it is commonly understood.

There is no persuasive reason to retain the common law rule that conferred upon the parents the primary right to recover medical expenses. The factors and concerns that gave rise to the common law ruling limiting the child's action in this respect are often illusory or can be otherwise addressed. This Court holds, therefore, that the right to maintain an action to recover medical expenses related to a child's treatment is vested jointly in the child and the parents. Either the parents or the minor may maintain an action, although under no circumstances will a double recovery be allowed. A procedural bar that prevents the parents from maintaining an action will not affect the child's right to recover.

*Boley*, 905 S.W.2d at 89–90.

■ Since our early case in *McCallam*, which recognized the common law rule, exceptions have been recognized. For example, we have permitted a minor to recover medical expenses where the minor's father was deceased and the minor was liable for

his or her own medical expenses. In Syllabus Point 2 of *Grim v. Moore*, 121 W.Va. 299, 3 S.E.2d 448 (1939), this Court held:

> While the rule is established that a father is primarily responsible for expenses necessarily incurred in the treatment of his injured infant, yet when the father is dead, leaving no estate, the rule can have no application. In such a case, the infant himself is liable for the expenses, and may recover them from the person causing the injury, if it was tortious.

*See also*, Syllabus Point 2, *Nugen v. Hildebrand*, 145 W.Va. 420, 114 S.E.2d 896 (1960) ("A plaintiff in an action to recover damages for personal injury inflicted previous to his attaining the age of twenty-one years, may recover . . . hospital and medical expenses incurred by reason of such injury during the plaintiff's minority, where it appears that plaintiff's father was deceased at the time the injury was inflicted.").

■ Our holdings in *Grim* and *Nugen* demonstrate that the common law rule, in its original form, no longer exists in West Virginia. Application of the common law doctrine of necessaries confirms that in West Virginia, a minor may be responsible for his or her own medical expenses.[13] Indeed, when con-

---

13. The prevailing modern rule is that in the absence of a statute to the contrary, an infant's contracts are voidable. *See* "Infant's liability for medical, dental, or hospital services", 53 A.L.R.4th 1249 (1987). However, in some scenarios, an infant may be held liable for the value of necessaries furnished to him or her. *Id.* Medical services reasonably required by the infant are classified as "necessaries." *Id.* West Virginia law regarding the concept of necessaries, *i.e.*, the "doctrine of necessaries", dates back almost to our State's inception, being recognized in *Wallis v. Neale*, 43 W.Va. 529, 27 S.E. 227 (1897). In *Wallis*, this Court held that a guardian was entitled to credit in the settlement of his accounts for the amounts so paid for his ward, the benefit of which was received by such ward.

This Court first extended the common law doctrine of necessaries beyond the guardianship relationship, and adopted the doctrine as it applied to infants in *Myers v. Myers*, 47 W.Va. 487, 489, 35 S.E. 868, 870 (1900). *Myers* involved a lawsuit brought by a son against his mother, a widow, to enforce an alleged resulting trust in a tract of land owned by the mother. The mother, who had taken her emancipated son, then 19, back into her home after he was severely hurt in

the mines, alleged that he was no longer owed any moneys from the trust. She nursed him back to health for 20 weeks, giving him necessities such as shelter, nursing, medicine, clothing, and food totaling $430.64, all for no charge. This Court, in finding for the defendant mother, found that "[a]n infant, without regard to guardianship, is liable for necessaries." *Id.*

Subsequent to *Myers*, the first statute codifying the common law doctrine of necessaries applying specifically to the guardian/ward relationship, was enacted. In *Buskirk v. Sanders*, 70 W.Va. 363, 73 S.E. 937 (1912), this Court discussed section 7, chapter 82, Code 1906, and held that a guardian, without previous order of the court, unless for necessaries, was not entitled to credit for disbursements, out of the principle of his ward's estate. Necessaries were determined to include necessary repairs to the ward's real estate. *Id.* However, in *Campbell v. O'Neill*, 69 W.Va. 459, 72 S.E. 732 (1911), this Court recognized that notwithstanding that statute, a court of equity may, upon the principles of *Myers v. Myers*, *supra*, reimburse a guardian out of the principle of a ward's estate, for disbursements which the law regards for necessaries.

This Court recognized that an infant may be held liable under the doctrine of necessaries for

sidered with W. Va.Code § 48–29–303 (2001), which statutorily makes a husband and wife responsible for the reasonable and necessary services of a physician rendered to their minor child, we believe it appropriate to revisit the policy considerations which underlie the common law rule as it applies to a minor's standing to seek recovery for all medical expenses, pre-and post-majority, in his or her suit for injuries caused by tortious conduct. In doing so, we observe that the Legislature seems to have limited the application of W. Va.Code § 48–29–303 (2001) only to *physician* services. No mention is made regarding other potential medical expenses, such as hospital expenses, physical and occupational therapy, diagnostic testing, and so on.

Initially, we observe that two fundamental policies are of paramount concern to the issues raised in this appeal. First, a tortfeasor should be responsible for the harm caused by his or her conduct. This policy consideration is a bedrock principle of our system of jurisprudence. To the extent that tortfeasors are not responsible for the harm they cause, or are insulated from such responsibility by procedural machinations, the costs for such harm is shifted to others, whether that be to the victim, to someone responsible for the victim, or to the state. This first policy concern, therefore, is of primacy to our consideration—particularly, where as here, the ability to seek healthcare for a child who may be fault free is implicated. In doing so, we should endeavor to ensure that the true payor of such medical expenses is appropriately compensated without the potential for overpayment by the tortfeasor.

We believe another important factor needs to also be considered. It is, frankly, absurd that two separate actions for a child's medical expenses (pre-and post-majority) now arise from the same allegedly tortious conduct. Under the scenario argued by Dr. Padmanaban, we would sanction a system requiring two distinct actions having two different potential statutes of limitations; a parent's lawsuit arguably needing to be pled and tried at one time, and a minor's suit being pled and tried later, perhaps as long as a decade later, all on the same facts, with the same witnesses. The responsibility for the first jury would be to carefully identify only pre-majority medical expenses, while the responsibility of the second jury would be to carefully identify only post-majority medical expenses—all for a child who may be at most 12 years old or younger.[14] Coupled with the potential for inconsistent results, we believe the need for the maintenance of two separate law suits seeking damages arising from the same tortious conduct to the same alleged victim to be ridiculous from the standpoint of judicial resources. More to the point, it is difficult for us to fathom a legal system in which a child could be responsible for his or her pre-majority medical expenses, but that he or she, simply by reason of infancy, is unable to pursue such damages in his or her lawsuit.

necessary medical expenses in *Grim, supra.* Twenty years later, in Syl. Pt. 2, *Nugen v. Hildebrand,* 145 W.Va. 420, 114 S.E.2d 896 (1960), this Court reinforced *Grim* and held that "[a] plaintiff in an action to recover damages for personal injury inflicted previous to his attaining the age of twenty-one years, may recover the loss of wages, hospital and medical expenses incurred by reason of such injury during plaintiff's majority, where it appears that plaintiff's father was deceased at the time the injury was inflicted."

Subsequent to our holdings in *Grim and Nugen, supra,* it appears that this Court did not revisit the issue of necessaries until 1995. In Syl. Pt. 1 of *Statler v. Dodson,* 195 W.Va. 646, 466 S.E.2d 497 (1995), this Court extended the application of the doctrine of necessaries to the context of legal services rendered to infants. The Court held that "[a]lthough at common law a

contract for legal services between infants and their lawyers will be implied and therefore, enforceable: provided, (1) the employment of a lawyer on behalf of the infant was reasonably necessary; (2) the contract was fair and reasonable at the time it was entered: and (4) the contract is fair in relation to the amount of legal services needed and performed." In *Statler,* an attorney had rendered legal services in an estate battle.

14. Since the two lawsuits would be independent of each other, there could be no application of principles in such a system of issue preclusion or consistency in determination of matters such as a child's comparative fault (which could lessen recovery in the child's suit, but not the parent's) or the parent's comparative fault (which could lessen recovery in the parent's suit, but not the child's).

We agree with the rationale of those courts that permit both minors and parents to seek recovery of a minor victim's pre-majority medical expenses. Significantly, recognizing a right of recovery in both minors and parents negates the difficulties that arise when different statutes of limitation apply to claims brought by parents and minors. Judicial economy and consistency of results is preserved. Moreover, in this way, a child is no longer dependent on his or her parent to timely seek expenses for needed medical treatment by separate suit.[15] We do not believe that tortfeasors are unfairly disadvantaged by this new rule. "However parent and child divide their claim for medical expenses, that division is of no consequence to the tortfeasor, as long as he [or she] is not subject to pay twice for the same expenses." *Scott Co. School Dist. 1 v. Asher*, 263 Ind. 47, 324 N.E.2d 496, 499 (1975). Finally, we are not inclined to retain the common law rule for the sole reason that it is accepted by a majority of courts. Rather, we are,

> more concerned with the persuasiveness of precedent than with the weight of precedent Whether we are the first state—or the fiftieth state—to adopt a specific legal proposition, our decision inevitably will be based upon what we deem to be in the best interests of justice and of the citizens of this State at the time the question is presented to us."

*Belcher v. Goins*, 184 W.Va. 395, 402, 400 S.E.2d 830, 837 (1990) (internal citations, brackets, quotations, and punctuation omitted). In sum, we find no compelling reasons to retain the common law rule, and several persuasive reasons for adoption of a new rule.

 Therefore, we now hold that the right to maintain an action to recover pre-majority medical expenses incurred as a result of a minor's personal injuries belongs to both the minor and the minor's parents, but under no circumstances will double recovery be allowed. Thus, a procedural bar that prevents the parents from maintaining an action will not affect their minor child's right

to recover. To the extent that *McCallam v. Hope Natural Gas*, 93 W.Va. 426, 117 S.E. 148 (1923); *Barker v. Saunders*, 116 W.Va. 548, 182 S.E. 289 (1935); *Glover v. Narick*, 184 W.Va. 381, 400 S.E.2d 816 (1990), and other cases are inconsistent with this holding, those cases are overruled.

As a result of our holding, we find that the circuit court's ruling that only the petitioner, Jeanette Packard, and not her minor son, Robert, has the right to recover medical expenses incurred during Robert's minority is clear error. When determining whether to issue a writ of prohibition, this Court gives substantial weight to the existence of clear legal error. In addition, we find that the circuit court's ruling raises the new and important issue of whether a child may recover for medical expenses incurred during minority where the parents' claim for such damages is time-barred. The existence of a new and important issue of law is another factor that weighs in favor of granting the writ. Accordingly, we grant the writ of prohibition sought by the petitioner to prevent the enforcement of the circuit court's ruling that denies the minor plaintiff, Robert Whitt, the right to recover medical expenses incurred during his minority.

## B.

### Right to Amend the Complaint

 Second, the petitioner challenges the circuit court's order denying her leave to amend the complaint herein to add a cause of action for battery. According to the petitioner, this Court has indicated that leave to amend a pleading to conform to the evidence pursuant to Rule 15 of the Rules of Civil Procedure should be liberally granted to facilitate a decision on the merits. The petitioner asserts that leave to amend her pleading should be permitted in the instant case because the facts surrounding the consent to Robert's surgery have already been adduced. Also, says the petitioner, there would be no prejudice to Dr. Padmanaban from such an amendment because the trial of the case was

---

**15.** This likewise avoids the child's medical care becoming a public burden due to the dilatory inaction of a parent.

continued at the time her motion for leave to amend was made.

Dr. Padmanaban responds that the circuit court did not abuse its discretion in denying the petitioner leave to amend her complaint because the delay between the time the petitioner filed her complaint and the time she moved for leave to amend was unreasonable. Further, says Dr. Padmanaban, the petitioner did not present a valid reason for the delay.

Rule 15(a) of our Rules of Civil Procedure provides that "... a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." *W. Va.R.Civ.P.*, Rule 15(a). " 'A trial court is vested with a sound discretion in granting or refusing leave to amend pleadings in civil actions. Leave to amend should be freely given when justice so requires, but the action of a trial court in refusing to grant leave to amend a pleading will not be regarded as reversible error in the absence of a showing of an abuse of the trial court's discretion in ruling upon a motion for leave to amend.' Syllabus Point 6, *Perdue v. S.J. Groves and Sons Co.*, 152 W.Va. 222, 161 S.E.2d 250 (1968)" Syl.Pt. 5, *Poling v. Belington Bank, Inc.*, 207 W.Va. 145, 529 S.E.2d 856 (1999). Thus, "[w]hen leave of court is required, it rests in the sound discretion of the trial court whether to permit the amendment, and it has been held not to be an abuse thereof to deny the right to amend if ... (4) there has been a delay in seeking an amendment even though the facts on which the amendment would be based have been long known by the party." Marlyn E. Lugar & Lee Silverstein, *West Virginia Rules of Civil Procedure*, Rule 15(a), pp. 136–137 (1960) (internal footnotes omitted).

■ We agree with Dr. Padmanaban that the circuit court did not abuse its discretion in denying the petitioner leave to amend her complaint. In our recent case of *State ex rel. Vedder v. Zakaib*, 217 W.Va. 528, 618 S.E.2d 537 (2005), this Court found no abuse of discretion in denying leave to amend a complaint to a plaintiff who for no valid reason waited at least ten months after becoming aware of the existence of an additional cause of action before making her motion. In Syllabus Point 3 of *Vedder*, we held:

> The liberality allowed in the amendment of pleadings pursuant to Rule 15(a) [16] of the West Virginia Rules of Civil Procedure does not entitle a party to be dilatory in asserting claims or to neglect his or her case for a long period of time. Lack of diligence is justification for a denial of leave to amend where the delay is unreasonable, and places the burden on the moving party to demonstrate some valid reason for his or her neglect and delay.

(Footnote added.). The petitioner knew that Robert's grandparents, and not she, signed the surgical consent form for Robert's surgery before her complaint was filed. Nevertheless, the petitioner did not include a cause of action for battery based on these facts in her complaint. Instead, the petitioner waited for approximately two years and nine months before bringing the issue of consent to the circuit court's attention. Moreover, the petitioner has failed to identify a valid reason for her dilatory behavior. In light of the petitioner's inexcusable delay, we find that the circuit court did not abuse its discretion in denying the petitioner leave to amend her complaint. Because we find no clear error as a matter of law on the circuit court's part, we deny the writ of prohibition prayed for by the petitioner in her challenge to the circuit court's denial of leave to permit the petitioner to amend her complaint.

## III.

## CONCLUSION

For the reasons stated above, we grant the writ of prohibition sought by the petitioner to

---

**16.** In her brief to this Court, the petitioner refers to her motion as a motion to amend the pleadings to conform to the evidence which suggests that the motion was made pursuant to Rule 15(b). "Rule 15(b) provides that when issues not raised by the pleadings are tried by express or implied consent of the parties, such issues must be treated in all respects as if they had been raised in the pleadings." Franklin D. Cleckley, Robin J. Davis, Louis J. Palmer, Jr., *Litigation Handbook*, § 15(b)[1], p. 338(2002). In the instant case, however, the petitioner's motion to amend was made prior to trial and before any evidence had been adduced. Therefore, it should be considered a motion to amend the pleadings under Rule 15(a).

permit Robert Whitt to seek recovery of medical expenses incurred during his minority as a result of the alleged tortious conduct of Dr. Padmanaban. We deny the writ of prohibition sought by the petitioner to permit her to amend her complaint to add a cause of action for battery.

Writ Granted as Moulded.

Justice MAYNARD deeming himself disqualified did not participate in the decision in this case.

Senior Status Judge L.D. EGNOR sitting by temporary assignment.